All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning and welcome to the Ninth Circuit. Welcome virtually to the Ninth Circuit. We've got three argued cases this morning. We've read your briefs and we look forward to your arguments. The first of them is United States v. Lugo, set for ten minutes aside. And I believe, Mr. Nelson, you're going first. Thank you. May it please the Court, opposing counsel. Hang on just a minute. We appear to have lost your opposing counsel for the moment. Here he comes. Apologies, Your Honor. I had stopped the video for Andy's, Mr. Nelson's portion of the argument. I can keep it up, though, if you wish. So we're back in business. Can both of you hear me? Raise your hand. Okay. Let's take this from the top. Mr. Nelson, it's all yours. Thank you, Your Honor. The roadside seizure of Mr. Lugo and his truck violated the Fourth Amendment in two distinct ways. First, despite the Supreme Court's holding in Pennsylvania v. Mims that the directive to step out of the vehicle is a de minimis intrusion, we believe that that, closely followed within two minutes by the directive to stand by the hood of the trooper's patrol car, represents a seizure within the meaning of the Fourth Amendment and is a distinct constitutional event. At that moment in time, the trooper couldn't— I mean, Mims doesn't—Mims acknowledges it's some form of additional restraint, but it seems to create a sort of per se reasonableness rule that the safety concerns always justify an order to step out of the car during a stop for what would otherwise be a terrorist act. Yes, Your Honor, and I think it's been interpreted that way consistently. I think the distinction here is that within two minutes, as the video demonstrates, the patrolman tells Mr. Lugo where to stand. His freedom of movement has been significantly curtailed at that moment, and so our argument is that— Mims is saying—Mims says you can be ordered out of the car, but once that's true, they can't tell you anywhere, even on the side of the road, to stand one way versus another for safety. Well, I think Mims dealt more with the Terry stop portion, Judge, in the pat-down, but I don't know that I would interpret Mims that way. I think that this case is different in that Mr. Lugo is not free to leave at that point. He is being told where to stand. And so our argument here is that that seizure, the first claim, occurred at the earliest when he's directed to step from the patrol car and at the latest within two minutes when he's told where to stand. But if he's—the way he's pulled off to the side of the road, the testimony is that he's not pulled far enough over so that if Officer Morris wants to speak to him and he's remaining in the vehicle, Officer Morris is close enough to the passing traffic on the interstate that it's dangerous for the officer. So I think it's permissible to ask him to get out of the vehicle so that Officer Morris can speak to him. And at that point, whether he says— Officer says, I'd like to speak to you, and Officer Morris stands somewhere, well, obviously he can't then run 20 yards away and say, well, talk to me over here. No, you've got to talk to me where I am. So there's going to be some constraint on his movement once he gets out of the vehicle that's consistent with talking to Officer Morris. And if Officer Morris thinks, well, the safest place, let's go by the hood of the vehicle. That's a good, safe place to talk, I don't see the problem. Yeah, well, an officer's safety is a very difficult thing to dispute as appellate counsel or any counsel, really. But if you watch the video, Your Honor, the first part of the stop and the exchange does take place at the driver's side window. In fact, many of the facts, the cluster of facts that the trooper marshals to support his view that criminal activity is afoot occur during that very early exchange, which does occur at the driver's side window. So it's hard for me to dispute whether the officer felt safe or not. But he does begin what becomes a drug investigation there at the driver's side of the car, the truck. Right, I know, I see that. Yeah, so that's our first claim. The second claim, of course, is this, you are free to leave, but I'm seizing your vehicle ultimatum is unreasonable under the Fourth Amendment and unsupported by probable cause. How far out of Bozeman were they? At some point they walked back to town. I read this in Judge Christensen's order. How far out of town were they? Yeah, well, the Gallatin Valley is a big one. I think it was like a couple miles before the first Bozeman exit coming from the west. So not more than 10 miles, I believe. But I'm not seeing anything in the argument here that you're free to leave was an illusory sort of thing. I mean, they're not in the middle of the Gobi Desert, you're free to leave, but what am I supposed to do? Yeah, I see your point, Judge. The touchstone of the Fourth Amendment, of course, is reasonableness. And our claim at bottom as to the second argument is that this tactic of saying you're free to go, but I'm seizing your vehicle is unreasonable, particularly when Mr. Lugo is from Texas. All his personal property and everything he has is in his vehicle. And so we look at that in two ways. At a minimum, it's a recognition that at that moment the trooper lacks probable cause to arrest him on an offense. I think viewed more skeptically, it's a ploy, it's a tactic, and I think the record supports that inference here because the trooper testifies that I decided I wanted to search that car in the very early moments of the encounter. And once he refused consent, the video demonstrates that he was immediately, Mr. Lugo was immediately told, well, you're free to go, but we're seizing your car. It's not we're lengthening the detention in order to bring the canine. It's we are seizing your car. You cannot get back in it for any reason. So then the question then just becomes whether the officer had probable cause at that point to seize the vehicle. The fact that the officer, for whatever reason, you know, was declining also to, you know, to seize Mr. Lugo doesn't take away from the fact if he did in fact have probable cause to seize the car, right? We are arguing that he lacked probable cause at that moment in time, Judge. I think somewhat troubling is the trooper's testimony that he wasn't going to arrest him on a misdemeanor marijuana offense anyway. So I think the record supports the view that in this particular instance, that directive, you're free to go, but I'm seizing your car, is unreasonable and not supported by probable cause. You're right. That is our argument. But I'm my point is that it is there any argument other than whether there's probable cause? Because if there's probable cause to seize the vehicle and, you know, maybe he could have seized the vehicle and arrested Mr. Lugo. But if he has probable cause to seize the car, I don't see why whether or not he lets Mr. Lugo go has anything to do with being able to continue to seize the car. Well, I think the way you phrase that, I'd have to concede that you need probable cause. And if you don't have it, you can't seize the vehicle. Help me understand more your point about, well, the probable cause argument for the government is defeated because he says he is not going to arrest him for a misdemeanor marijuana charge. If he had said I had probable cause to arrest him or and seize the vehicle and or seize the vehicle on the marijuana charge, even for a misdemeanor, that would change the analysis. Yes, that's a probable cause for something for which he has indicated he will, in fact, arrest him. Or is it probable cause? I have probable cause to arrest you, but I'm actually kind of hoping I'm going to find some more stuff, which he did. Yeah, yeah. I think to answer that question, your honor, the first point I'd like to make is that any quantum of probable cause that exists in this scenario relates to a marijuana offense, not to anything else. No, they find the cocaine scales. They find that later. Right. And the firearms, the firearms. Frankly, when when we brought this motion at the district court level, I'm thinking we need to front end load the analysis early in the stop because of this firearm. The trooper didn't really testify about it. That didn't seem to be part of his probable cause analysis, the presence of firearms in the vehicle. So it relates to marijuana. I think his his his acknowledgement that he wasn't going to arrest him is is is telling in the sense that we believe this. You're free to go, but we're seizing your vehicle is designed to elicit consent. And as soon as consent is declined, my client is sent down the side of an interstate hundreds of miles from home without his car. And we think that's a that's a constitutional event. Now, the district court was a little confused about the nature of the argument and talked about the Saldal case. And I acknowledge we probably could have been clearer. But my point there is not so much whether it's a property interest at stake or the precise nature of the interest. The court in Saldal said certain wrongs affect more than a single right. And so operating from the lodestar of reasonableness, that's our claim as to the second argument. Let's hear from the government and we'll give you a chance to respond. Thank you, sir. Good morning, your honors. May it please the court. Randy Tanner for the United States. Mr. Lugo is challenging two events through this appeal, as he described Trooper Morris's directive to Lugo that he exit his vehicle and Trooper Morris's seizure of the truck. Neither of those events or actions violated the Fourth Amendment. As to the directive to exit the vehicle, it was lawful for two independent reasons. And the first is, as was discussed earlier under Pennsylvania v. MEND, that decision essentially creates a per se reasonableness rule that it is appropriate for an officer, in the interest of officer safety, to direct a driver out of the vehicle in order to ensure the officer's safety. And here we had a situation where Mr. Lugo had pulled over very near the driving lane of the interstate highway. Judge Christensen of the District Court found at page 11 of the record that vehicles were passing within inches of Trooper Morris. And so it was appropriate for Trooper Morris to direct Mr. Lugo out of the vehicle. And once directed out of the vehicle, he essentially had two places, two options where he could position Mr. Lugo. It would have either been by the patrol car or in the patrol car. You have to ask the question, where else would he have directed Mr. Lugo to stand but beside the patrol car? Either by the patrol car or in the patrol car was the safest place for both Mr. Lugo and the trooper. So there was no constitutional violation in directing Mr. Lugo out of the vehicle.  To the extent that Mr. Lugo was kept outside of the vehicle for the duration of the stop, and during the drug investigation portion of the stop, Trooper Morris had reasonable suspicion to support that. Within two minutes, less than two minutes of approaching the vehicle right after the stop, Trooper Morris had smelled marijuana, seen marijuana in the truck, and had also seen the vehicle had the looked in or lived in look to it. Why does it matter that the car was messaged? And how does that contribute to probable cause? I don't see it. Right. So in isolation, if you view that factory in isolation alone, it might not be enough to support reasonable suspicion. But as Trooper Morris testified at around page 3032 of the record, I believe, it's typical for folks that are involved in drug trafficking crimes to essentially live in their truck en route from one location to another. So making very few stops that exposes them less. And so as Trooper Morris testified in his experience, it's not uncommon for folks who are involved in drug trafficking to have food wrappers strewn about the floor. In other words, not stopping to eat, eating on the run. But again, that's not the only factor that contributed to the reasonable suspicion that Trooper Morris had. He had also had very definitive objective evidence having seen and smelled both marijuana in the vehicle immediately coming up to Mr. Lugo after the stop. So Trooper Morris had both reasonable suspicion to keep Mr. Lugo outside of the vehicle after the traffic portion of the stop and then during the traffic portion of the stop under Pennsylvania v. Mims. Unless there are any questions about the Pennsylvania v. Mims issue and directing Mr. Lugo out of the vehicle, I'd like to touch base next on the seizure of the truck itself. And at about nine minutes into the stop, Trooper Morris asked Mr. Lugo if he could search the truck. And Mr. Lugo said no, but then he immediately told Trooper Morris that he had marijuana in the truck. And he asked the trooper if he could simply go get the marijuana and give it to Trooper Morris and avoid a search. Nonetheless, Mr. Lugo refused the search. The trooper told Mr. Lugo that he was going to call a K-9 unit. Trooper Morris finished up the traffic portion of the stop at about 17 minutes in, which is not a long duration for a traffic stop, told Mr. Lugo that he was free to go, that he and his passenger were free to go, but that he was going to keep the truck because he was going to do a K-9 search. At that point, when he concluded the traffic portion of the stop, he had reasonable suspicion to hold onto the truck until the K-9 got there to do the sniff. By that time, he had all the same factors that he had initially seen at the very first part of the stop, not to mention seeing the semi-automatic handgun in the truck seat, being told that there was an assault rifle in the truck, and then being told that there was marijuana in the truck. There's no question that all of those objective facts, articulable facts, gave Trooper Morris reasonable suspicion to hold onto the truck until the K-9 got there. When the K-9 got there, it alerted positively on the truck, and that certainly gave the trooper probable cause to impound the vehicle pending a search warrant application. Now, there's the question, and Mr. Nelson has raised the question, well, wasn't it unreasonable to seize the truck and then send Mr. Lugo on his way? And there are several factors to consider, but the short answer is no, it is not. First, Trooper Morris had offered Mr. Lugo several times to give him a ride back into Bozeman, but Mr. Lugo refused. The stop happened at about milepost 310 in Bozeman, and if I'm not mistaken, the first exit in Bozeman is around 309, 308, so this was not an unreasonable distance for Mr. Lugo to walk in the first place. The second consideration is that Trooper Morris had discretion to decide whether to arrest Lugo. He wasn't compelled to arrest Mr. Lugo. He testified, Trooper Morris testified at page 32 or 31 of the record that the Montana Highway Patrol's policy is to not arrest for misdemeanor marijuana offenses, and that is, quite frankly, a matter of prioritization of resources. The bottom line is that it appears that the Highway Patrol does not arrest for misdemeanor marijuana offenses in order to preserve resources. The third factor to consider here, too, is that Trooper Morris could not have searched the truck on the spot. Under Montana law, State v. Ellison, that's 14P3456, you have to have a search warrant in Montana to search a vehicle. They do not have the automobile exception as under federal law. What that means is that the Montana Highway Patrol, as a matter of course, will impound vehicles to search them because they have to get a search warrant. If at the time of the stop, all you have is the only evidence that you've seen is to arrest for a misdemeanor offense and it's not their policy to arrest for misdemeanor offenses, then they allow the subject to go free pending the results of the search warrant. Judge Fletcher, like you and Judge Collins mentioned, whether it was reasonable to cut Mr. Lugo loose or not pending the search of the vehicle once it was seized is really irrelevant to the question of whether there was probable cause in the first place to search the vehicle. Those are two separate events. Whether it was reasonable to allow Mr. Lugo to go does not affect the probable cause for seizing the vehicle itself. Finally, you have to ask the question, what's the alternative? Is it true that troopers must arrest an individual every time they want to search a vehicle, every time they want to apply for a search warrant for a vehicle? I think that most folks who would be involved in these traffic stops would prefer to be let go free rather than to be placed under arrest pending a search warrant. Your Honor, unless you have any other questions, the United States would ask the court to affirm the district court's order denying Mr. Lugo's motion to suppress. Thank you. Thank you. Mr. Nelson, we took you pretty far down to the wire here. Why don't we put two minutes on the clock for rebuttal? Thank you, Judge. I'll just be brief and direct my attention and the court's attention to some of the facts that the trooper articulated early in the stop to support lengthening the detention. So the smell of unburned marijuana, the testimony was that it was coming from the cab of the truck. At the suppression hearing, it was noted that the vast bulk of the marijuana eventually found in the vehicle was actually in the trunk, the bed of the pickup, in large glass jars. The only item of unburned marijuana found in the cab of the truck is that glass jar that the trooper says he saw really early in the stop. There's pictures in the record, and you can read that testimony. We think that finding is clearly erroneous, that he witnessed that glass jar early in the stop. We think the video shows him seeing it at about the 7.54 mark and that that's a fair inference. I'm sorry, I missed that. What's clearly erroneous? To the extent that the district court found that the trooper saw a glass jar of marijuana inside the cab of the truck in the first seconds of the stop, we believe that's not the case. You mean the district court clearly erred in believing testimony of Trooper Morris on that point? That's our contention, Judge. Now that was explained, at least to the judge's satisfaction, by the fact that the jar could have moved during towing. Yeah, and the pictures aren't great, unfortunately, but it's an enclosed plastic molded console. It's hard to imagine, if you look at the pictures, that it would move enough to change his perspective. At about 7.54, he seems to see it for the first time. Reasonable minds can disagree. That's our contention. Then the only thing left is he looks nervous and the truck is lived in. We would argue that he lacked articulable facts to lengthen the detention at that point. Okay, got it. Thank you, Your Honor. Thank both sides for their arguments. United States v. Lugo, submitted for decision. Thank you.
judges: W. Fletcher, Watford, Collins